

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00217-CR

_____

BRANDON SULLIVAN, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. F19-2449-431

Before Birdwell, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

### I. Introduction

A jury found Appellant Brandon Sullivan guilty of assault–family violence, and the trial court sentenced him to four years' confinement. *See* Tex. Penal Code Ann. § 12.34 (stating third-degree-felony punishment range is 2–10 years and up to a $10,000 fine), § 22.01(b)(2) (stating assault is a third-degree felony if it is committed against someone with whom the defendant has a dating, family, or household relationship and if the defendant has a previous family-violence conviction). In one issue, Sullivan asserts that the evidence is insufficient to support his conviction. We disagree and affirm the trial court's judgment.

### II. Sufficiency[1]

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021). The factfinder

---

[1]We combine our evidentiary review with our analysis to avoid repetition.

alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).

To convict Sullivan of third-degree felony assault–family violence, the jury had to determine beyond a reasonable doubt that in Denton County, on or about April 6, 2019, he had intentionally, knowingly, or recklessly caused bodily injury to Tomi Sellars (his then-girlfriend) by grabbing, pushing, or slamming her with his hand, and that he had a June 20, 2013 assault–family violence conviction. *See* Tex. Penal Code Ann. § 22.01(b)(2). At the trial's beginning, Sullivan stipulated to the prior conviction.

## A. State's case

Ian Thiele, a Texas A&M University student and part-time Costco employee, and Noah Austin, a Google employee, testified that they had been high school students when they witnessed Sullivan's April 6, 2019 assault on Sellars.[2] They had been playing Pokémon GO[3] in the Square,[4] waiting for Thiele's older brother to finish

---

[2]Thiele and Austin both testified that they did not know Sullivan or Sellars and had never interacted with them before or after the assault.

[3]Pokémon GO is an "augmented reality" game played on mobile devices. Ryan Mitchell, Comment, *Pokémon Go-Es Directly to Court: How Pokémon Go Illustrates the Issue*

3

a date, when they heard a yell behind them.[5] They turned around and saw Sullivan push Sellars and walk away, leaving her to stumble after him. Austin stated that at that point, it did not look like anything was wrong with Sellars other than her obvious intoxication.

Thiele and Austin followed at a distance to make sure Sellars was okay. Sellars eventually rejoined Sullivan, and they engaged in another verbal altercation that led to a physical assault. Thiele testified that he and Austin intervened after Sullivan "proceeded to kind of throw [Sellars] into the ground face-first really hard." Thiele further testified,

> [Sullivan] had originally pushed her up to the car to the right of the truck from where I was looking. And then I believe the first hand went to her face and then eventually got to the back of her head, because she did hit the ground face-first. And then at that point, [Austin] ran up [and tried to get him away from Sellars], I called 911, and we got up to everything.

Austin gave similar testimony, stating that Sullivan had grabbed Sellars, had shoved her against a neighboring vehicle, and then "took her and shoved her down to the ground where she had hit her forehead on the curb there." Austin described Sullivan's

---

*of Virtual Trespass and the Need for Evolved Tort Laws*, 49 Tex. Tech L. Rev. 959, 960 (2017).

[4]Thiele and Austin showed the jury where the events took place on a Google map of the Square, which contains the Denton County courthouse, boxed in by streets and parking, with restaurants, bars, banks, offices, and shops across from the courthouse.

[5]Thiele and Austin gave conflicting testimony about their location in the Square and how far away they were from Sullivan and Sellars.

act as a "very forceful" shove that would hurt anyone. After Austin stepped in, Sullivan walked away, and Thiele called 911. The jury listened to Thiele's 911 call in which he reported where they were on the Square and told the dispatcher that a man had thrown a woman onto the pavement and that she "hit her face pretty hard."

Both Thiele and Austin described Sullivan's demeanor that night as angry and aggressive. They agreed that State's Exhibit 4, a photo of Sellars, accurately captured her appearance that night after the assault. The photo matches Austin's description of the injury: "She had a -- a massive, like golf-ball sized swell on her forehead and was bleeding out of her face." Austin stated that Sellars had not had that injury before the assault, noting, "Even from a distance, I would have noticed that." He also observed that although it had been around 11:00 p.m., the area was well-lighted by lights in the trees, streetlights, and lights from surrounding businesses. During recross-examination, when Sullivan's counsel asked him, "Would you be able to tell this jury, 100 percent certainty, I have no doubt in my mind she did not have anything on her forehead [before the assault]?" Austin replied, "Yes."

Thiele and Austin stayed at the scene to give written statements. While waiting for the police to arrive, a third witness, James Blair, helped Thiele make sure Sellars was okay; Blair also gave the police a statement.[6] Austin said that around five other

---

[6]Blair did not attend the trial because of out-of-town work obligations.

people were drawn to the scene and observed from a distance but did not get involved.

Denton Police Officer Mark Hill testified that he received the assault call around 11:15 p.m. and spoke with Thiele, Austin, and Blair and that their stories were consistent with each other and with the evidence on the scene. He also spoke with Sullivan, whom he described as having been "a little bit aggressive, belligerent," and "clearly intoxicated." State's Exhibit 5, a short clip of his body camera footage, was admitted into evidence and published to the jury. In the footage, Sullivan said that Sellars was his girlfriend and insisted that nothing had happened. When Officer Hill asked him what had happened to Sellars's head, Sullivan stated, "Nothing, dude! Like, she was just by my f-cking car; she's drunk as f-ck."

Chris Plank, who had been a Denton Police Department sergeant at the time of the assault, testified that Sellars's injuries were consistent with what Austin, Thiele, and Blair told him when he took their written statements. While he was on the scene, two other individuals approached him and told him that they had seen Sellars earlier in Andy's Bar and saw her fall into three or four tables on her way out. During cross-examination, he agreed that he could have asked—but did not ask—those individuals if they had seen any injuries on Sellars. He agreed that he cut them off and told them, "[P]eople saw an assault out here; we're good." He did not take their names, contact information, or written statements. During his redirect examination, he stated that Sellars's forehead injury was significant—a skull fracture—and not the kind of injury

6

that would be consistent with stumbling into tables while leaving a bar and that whether Sellars had stumbled in the bar did not affect whether three witnesses later saw Sullivan's slamming her to the ground.[7]

Sellars testified that she had been in a relationship with Sullivan, her son's father, from 2018 to 2020. She had a few drinks before they went out on April 6, 2019, and she opined that she was already intoxicated when they left for Denton. She did not recall anything after getting out of the vehicle in the Square. The next thing she remembered was "a blip of memory [of] being in the ambulance and then waking up in the hospital." Her medical records from that evening were admitted into evidence and showed that she had listed Sullivan in her patient contacts as "Significant Other," that she had arrived at the emergency room at 11:59 p.m., and that she had a "[r]ight frontal scalp soft tissue swelling/hematoma with an underlying acute, nondisplaced fracture of the inferior right frontal bone extending through the anterior right orbital roof."[8] Sellars was advised to follow up with a plastic surgeon and was prescribed a pain reliever. Sellars stated that she did not follow up with the plastic surgeon and that it took six months for her face to completely heal.

---

[7]Officer Hill gave similar testimony.

[8]A firefighter paramedic who had responded to the scene testified that Sellars's injury could have formed quickly.

**B. Defense's case**[9]

Sullivan testified that on the night of April 6, 2019, Sellars had started drinking before they went to a bar in Denton for a concert. When they arrived at the bar, he introduced her to his friends, and she had more drinks and started acting intoxicated. He stated that she had been "falling all over the place" and "running into tables and pillars," which had embarrassed him.

Sullivan claimed that he noticed Sellars's forehead laceration once they left the bar, that he had never shoved her in a violent way, and that he did not slam or push her to the pavement. When asked if Sellars had injured herself inside the bar, Sullivan replied,

> I didn't see anything really happen in the bar per se, but whenever I left to go to the truck, she started following me. And we were kind of being aggressive towards each other because of what had happened in the bar, I guess. And as I was leaving and walking, I just heard her screaming behind me, because she was calling my name, and I was just trying to go to the truck. And whenever I turned around, that's when I had actually saw that she had -- I was kind of freaking out because I saw that she had a -- an abrasion that was on her forehead. And it -- it just got me really worried. And it was just something I didn't -- I didn't want to deal with.

When asked by his counsel to explain his comments that were recorded on Officer Hill's body camera that night, Sullivan stated,

> I felt -- I don't -- I won't even lie. I felt attacked that night[] because I was being accused of something that I didn't do. And it was just

---

[9]Because Sullivan testified, his prior convictions—a February 2016 indecent-exposure conviction, a January 2018 state-jail felony theft conviction, and a June 2020 assault–family violence conviction—were admitted into evidence.

aggravating to me[] because I had so many people coming at me from so many different areas, telling me that I did something that I didn't do. And I didn't know what to do at all. Like, I had no idea what to do. I think the situa- -- that's all I got.

During cross-examination, Sullivan again asserted that he had not assaulted Sellars and that Sellars had fallen on her own because she was inebriated. He contended that Thiele and Austin, whom he did not know, had made up the assault story. During redirect examination, he clarified that he thought they had misconstrued the situation.

## C. Analysis

Sullivan contends that his testimony that Sellars had been intoxicated, had fallen, and had run into tables and pillars at a bar; that he had noticed her head wound when she followed him outside; and that he had never thrown her to the ground negated the State's evidence. He also argues that the State's witnesses gave conflicting accounts of the alleged assault and that "their testimony was clouded by an almost four-year delay between arrest and trial and the fact that they witnessed the events at night and from a distance."

Sullivan disregards that the jury—as the judge of the evidence's weight and credibility—was free to disbelieve all or any part of his testimony or that of the other witnesses. *See Martin*, 635 S.W.3d at 679. Here, the jury ultimately had to determine between the testimony of two witnesses—Thiele and Austin—who knew neither Sullivan nor Sellars and stated that they had seen him throw Sellars to the ground and

cause her injury, as recorded in Thiele's 911 call, and Sullivan's testimony that he did not shove Sellars or cause her injury, including his assertion, captured on Officer Hill's body camera, that he had done nothing.

The record reflects that the jury deliberated intensely before reaching its unanimous verdict. Because we presume that the jury resolved any conflicting inferences in the verdict's favor and must defer to that resolution, *see Braughton*, 569 S.W.3d at 608, the evidence is sufficient to support Sullivan's conviction,[10] and we overrule his sole issue.

### III. Conclusion

Having overruled Sullivan's sole issue, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 27, 2024

---

[10]That is, Sullivan stipulated to his June 20, 2013 assault–family violence conviction and the evidence established that in Denton County, on April 6, 2019, Sellars had been Sullivan's girlfriend and—if the jury believed Thiele and Austin—he had intentionally, knowingly, or recklessly injured Sellars by grabbing, pushing, or slamming her with his hand. *See* Tex. Penal Code Ann. § 22.01(b)(2); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.